IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

TYRONE R. GLADDEN,        )
                          )
           Petitioner,    )
                          )
     v.                   )    1:15CV207
                          )
O. WASHINTGON,            )
                          )
                          )
           Respondent.    )

## ORDER AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Petitioner, a prisoner of the State of North Carolina, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254.[1] (Docket Entry 1.) Respondent has filed an Initial Answer (Docket Entry 7), a Motion to Dismiss (Docket Entry 8), and a Brief in support (Docket Entry 9). Petitioner has filed a Response. (Docket Entry 11.) This case is now prepared for a ruling.

## Background

On July 26, 2007, Petitioner was convicted after a jury trial in Superior Court, Cabarrus County of two counts of first degree murder; one count of first-degree burglary; one count of conspiracy to commit murder; and four counts of solicitation to commit murder. (Docket Entry 1, §§ 1-6.) He was sentenced to life imprisonment without parole for the murder charges and to additional terms of imprisonment for the remaining convictions. (*Id.*, § 3.) Petitioner filed a timely appeal with the North Carolina Court of Appeals, which, on August 3, 2010, found no error in his convictions. *State v. Gladden*, 206 N.C. App. 331 (2010). Petitioner did

---

[1] Petitioner has also filed a supporting brief. (Docket Entry 1, Attach. 4 at 28-42.)

not file a petition for discretionary review with the Supreme Court of North Carolina, seeking review of the decision of the North Carolina Court of Appeals, but instead filed a petition for writ of certiorari in that court on September 13, 2010. *State v. Gladden*, 365 N.C. 88 (2011). It was denied on March 10, 2011. *Id.*

On June 3, 2011, Petitioner filed a Motion for Appropriate Relief ("MAR") in Superior Court, Cabarrus County. (Docket Entry 9, Exs. C-D.) On August 4, 2011, the MAR was denied. (*Id.* at Ex. D.) On September 19, 2011, Petitioner filed a petition for writ of certiorari with the North Carolina Court of Appeals to review the denial of the MAR, which was denied on October 6, 2011. (*Id.*, E.)

In February of 2013, Petitioner filed a motion for DNA testing in Superior Court, Cabarrus County, which was denied on July 9, 2013 and denied again upon reconsideration on July 19, 2013. *See State v. Gladden*, 762 S.E.2d 531 (N.C. Ct. App. 2014). Petitioner appealed to the North Carolina Court of Appeals, which affirmed the decision of the trial court on June 17, 2014. *Id.* Petitioner's request for discretionary review with the Supreme Court of North Carolina was dismissed on January 22, 2015. *State v. Gladden*, 367 N.C. 811 (2015).

Additionally, Petitioner also filed a second MAR in Superior Court, Cabarrus County on November 7, 2014, which was denied on November 14, 2014. (Docket Entry 1, Attach 1 at 9-25.) Petitioner then filed a petition for writ of certiorari in the North Carolina Court of Appeals, seeking review of the denial of his second MAR, on December 10, 2014, which was denied on December 16, 2014. (*Id.* at 3-8.) Next, Petitioner sought discretionary review with the Supreme Court of North Carolina on December 29, 2014, which was dismissed on January

22, 2015. (*Id.* at 1-2.) Petitioner signed the instant Petition on March 5, 2015; it was date stamped as filed on March 9, 2015. (Docket Entry 1.)

## Petitioner's Claims

The Petition raises two claims. First, Petitioner contends that his convictions were obtained through perjured or hearsay testimony, because "the prosecutor knowingly used perjured testimony to obtain a guilty conviction and misled the jury to find [him] guilty on all charges." (Docket Entry 1, §12, Ground One.) Second, Petitioner contends that his "[g]uilty conviction was obtained in violation of the 5th Amendment, Double Jeopardy Clause." (*Id.*, Ground Two.) As explained below, these claims are time-barred and should be dismissed.

## Discussion

Respondent requests dismissal on the ground that the Petition (Docket Entry 1) was filed beyond the one-year limitation period imposed by 28 U.S.C. § 2244(d)(1). (Docket Entry 8.) In order to assess Respondent's limitation argument, which is a threshold issue, the Court first must determine when Petitioner's one-year period to file his § 2254 petition commenced. In this regard, the United States Court of Appeals for the Fourth Circuit has explained that:

> Under § 2244(d)(1)(A)-(D), the one-year limitation period *begins to run from* the latest of several potential starting dates:
>
> (A) *the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;*
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly

3

recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

*Green v. Johnson*, 515 F.3d 290, 303-04 (4th Cir. 2008) (emphasis added). The record does not reveal any basis for concluding that subparagraph (C) of § 2244(d)(1) applies here.

### Subparagraph (A)

Under subparagraph (A), Petitioner's one-year limitation period commenced on "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). The Court must therefore ascertain when direct review (or the time for seeking direct review) of Petitioner's underlying conviction(s) ended. Here, the North Carolina Court of Appeals found no error in Petitioner's criminal convictions on August 3, 2010. Petitioner did not pursue direct appeal further.[2]

---

[2] As noted, Petitioner did not file a petition for discretionary review with the Supreme Court of North Carolina, seeking review of the decision of the North Carolina Court of Appeals. Instead, Petitioner filed a petition for writ of certiorari with that court on September 13, 2010, which was denied on March 10, 2011. *State v. Gladden*, 365 N.C. 88 (2011). Nevertheless, only "a properly filed application for State post-conviction or other collateral review" tolls the limitations period. 28 U.S.C. § 2244(d)(2). Here, the petition for writ of certiorari filed with the Supreme Court of North Carolina was not sufficient to statutorily toll the limitations period because it was not "properly filed." *Artuz v. Bennett*, 531 U.S. 4, 8 (2000) (describing "properly filed" document as one submitted in accordance with state rules concerning form of document, time limits, and proper court and office for filing). A petition for certiorari to the Supreme Court of North Carolina, for the purposes of seeking an out-of-time review of the affirmance of a conviction by the North Carolina Court of Appeals on direct review, was not a part of the direct review process in North Carolina. *See, e.g., Saguilar v. Harkleroad*, 348 F.Supp.2d 595, 598-601 (M.D.N.C.2004) (concluding that "petitions for certiorari in North Carolina are not a part of the direct review process referred to in AEDPA, nor are they to be used to determine the finality of convictions and the beginning of the one-year limitations period or the tolling of the limitation period"). Furthermore, the fact that the Supreme Court of North Carolina sometimes, in its discretion, suspends or creates exceptions to its procedural rules does not mean that a petition for discretionary review should serve to toll the limitations period. *See Rouse v. Lee*, 339 F.3d 238, 245 (4th Cir. 2003). And in any event, as explained later herein, even if Petitioner's September 13, 2010 petition for writ of certiorari with the Supreme Court of North Carolina were sufficient to statutorily toll the

4

Petitioner's convictions thus became final on September 7, 2010, that is, thirty-five days after the August 3, 2010 opinion was issued from the Court of Appeals. *See* N.C. R.App. P. Rules 14(a) and 15(b) (15 days to file from the issuance of the Court of Appeals' mandate to file notice of appeal and/or PDR in Supreme Court of North Carolina) and Rule 32(b) (unless court orders otherwise, mandate issues 20 days after written opinion filed). Consequently, the time to file in this Court began on September 7, 2010 and, absent tolling, was to expire one year later on September 7, 2011. *See* 28 U.S.C. 2244(d)(1)(A) (providing that a conviction is final "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review").

However, prior to the expiration of the limitations period on September 7, 2011, Petitioner filed a post-conviction motion which tolled the limitations period. *Taylor v. Lee*, 186 F.3d 557, 561 (4th Cir. 1999) (concluding that state post-conviction proceedings generally toll the federal habeas deadline for "the entire period of state post-conviction proceedings, from initial filing to final disposition by the highest court (whether decision on the merits, denial of certiorari, or expiration of the period of time to seek further appellate review)."). Specifically, Petitioner filed a MAR in state court on June 3, 2011, 269 days after the onset of the limitations period on September 7, 2010. The MAR was denied on August 4, 2011. On September 19, 2011, Petitioner filed a petition for writ of certiorari with the North Carolina Court of Appeals to review the denial of the MAR, which was denied on October 6, 2011. The federal habeas imitations period resumed running at that time and expired 96 days later on January 10, 2012.

---

limitation period (which it was not for the reasons described earlier), his federal habeas Petition would still be untimely.

*See* N.C.G.S. § 7a-28(a) ("[d]ecisions of the Court of Appeals upon review of motions for appropriate relief listed in N.C.G.S. §15A-1415(b) are final and not subject to further review in the Supreme Court by appeal, motion, certification, writ, or otherwise."). Petitioner submitted the instant federal habeas petition in March of 2015. It is therefore more than three years late.

As noted, Petitioner filed additional post-conviction proceedings in state court, such as a motion for DNA testing in February of 2013 and a second MAR in November of 2014. However, he did not make any of these additional collateral filings in the state courts until 2013, well after his time to file a federal habeas petition had already expired. State filings made after the federal limitations period has passed do not restart or revive the filing period. *See Minter v. Beck*, 230 F.3d 663, 665 (4th Cir. 2000).

The Court notes further that even if Petitioner's September 13, 2010 petition for writ of certiorari with the Supreme Court of North Carolina were sufficient to statutorily toll the limitation period (which it was not for the reasons described earlier), his Petition would still be untimely. That petition was denied on March 10, 2011. *State v. Gladden*, 365 N.C. 88 (2011). Consequently, under this alternative hypothetical analysis, Petitioner's direct review would therefore have been final at the latest 90 days later on June 8, 2011. *See Clay v. United States*, 537 U.S. 522, 527 (2003) (holding that "[f]inality attaches when this Court affirms a conviction on the merits on direct review or denies a petition for a writ of certiorari, or when the time for filing a certiorari petition expires." (internal citations omitted)); *see also* Sup. Ct. R. 13.1 (allowing petitioners 90 days after highest state appellate court's denial to file for writ of certiorari). The one year limitations period would have then been statutorily tolled when

6

Petitioner filed his state court MAR on June 3, 2011 until the North Carolina Court of Appeals declined to review denial of the state court MAR on October 6, 2011. At this point the one-year limitation period would have begun and it would have expired 365 days later on October 6, 2012. Petitioner submitted the instant federal habeas petition in March of 2015. Therefore, even under this analysis, the Petition is more than two years late.

As noted repeatedly, Petitioner filed additional post-conviction proceedings in state court, such as a motion for DNA testing in February of 2013 and a second MAR in November of 2014. However, he did not make any of these additional collateral filings in the state courts until 2013, well after his time to file a federal habeas claim had already expired even under this alternative analysis. As explained, state filings made after the federal limitations period has passed do not restart or revive the filing period. *See Minter*, 230 F.3d at 665.

### Subparagraph (B)

Petitioner may also be arguing that he is entitled to a later starting date of his one-year limitation period because of an impediment created by state action. However, any argument under subparagraph (B)—which accounts for an "impediment to filing an application created by State action in violation of the Constitution or laws of the United States"—also fails. *Green*, 515 F.3d at 303-04. More specifically, Petitioner faults North Carolina Prisoner Legal Services for the untimeliness of his federal habeas Petition. (Docket Entry 1, Attach. 4 at 34-35.) However, NCPLS is not a state actor and, as explained in greater detail below, nothing NCPLS did caused Petitioner to miss his federal habeas deadline. *See Bryant v. N.C. Prisoner Legal Servs., Inc.*, Nos. 92-6339, 92-6340, 93–6563, 1993 WL 291448, at *1 (4th Cir. Aug. 2, 1993) (unpublished) (recognizing "NCPLS and its attorneys are not state actors"); *Smith v. Rounds*,

7

657 F. Supp. 1327, 1331-32 (E.D.N.C. 1986); *Winkfield v. Bagley*, 66 F. App'x 578, 582-83 (6th Cir. 2003) ("'Section 2244(d)(1)(B) requires a causal relationship between the unconstitutional state action and being prevented from filing the petition.'" (quoting *Dunker v. Bissonnette*, 154 F.Supp.2d 95, 105 (D.Mass. 2001)); *see also Polk County v. Dodson*, 454 U.S. 312, 325 (1981) (holding that a state-paid public defender did not act under color of state law when representing a criminal defendant). Any arguments along these lines fail.

### Subparagraph (D)

Petitioner also appears to invoke subparagraph (D) (Docket Entry 11 at 2), which provides that a Petitioner may file an application for a writ of habeas corpus within one year of "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2244(d)(1)(D). However, the factual predicates to Petitioner's instant claims were (or could have been with the exercise of due diligence) all plainly known to him at the latest by October 6, 2011, the date on which the North Carolina Court of Appeals denied certiorari review of the denial of his first MAR. In fact, Petitioner raised the issue of perjury and prosecutorial misconduct in his first MAR. (Docket Entry 9, Ex. C.) Petitioner also knew that the charges against co-defendant West were voluntarily dismissed, because he raised the issue on direct appeal. *Gladden*, 206 N.C. App. at 331. Petitioner has failed to provide any reason to conclude that this subparagraph warrants a later starting date of the one year deadline to file.

### Equitable Tolling

Petitioner also makes a number of equitable tolling arguments. The doctrine of equitable tolling applies to the time bar set forth in Section 2244. *Holland v. Florida*, 130 S.Ct.

8

2549, 2562 (2010). Equitable tolling may excuse an otherwise untimely filing when a petitioner "shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Id.* (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)). However, none of these arguments have merit.

First, Petitioner implies that failing to review his Petition on the merits would be a grave "miscarriage of justice." (Docket Entry 1, Attach. 4 at 34.) This contention simply devolves into an argument that his claims have merit, which is generally irrelevant to the timeliness analysis. *See Rouse*, 339 F.3d at 251-52.

Second, Petitioner claims that his ability to file a federal habeas petition was impaired by his lack of a law library, lack of a copy machine, and by NCPLS. (Docket Entry 1, Attach 4 at 35.) However, the state is not constitutionally required to provide prison libraries or legal materials or copy machines, but satisfies its obligations through NCPLS. *See Burgess v. Herron*, No. 1:11CV420, 2011 WL 5289769, at *2 (M.D.N.C. Nov. 2, 2011) (unpublished). Moreover, Petitioner's claim that he missed his deadline because NCPLS held his documents too long is also insufficient to toll the deadline. (Docket Entry 1, Attach 4 at 35.) Conclusory assertions that a lengthy NCPLS review process caused a petitioner to miss the deadline are routinely dismissed. *See, eg, Paniagua v. Dail*, No. 1:12CV1253, 2013 WL 4764586, *4 n. 6. (M.D.N.C. Sept. 4, 2013); *Rhew v. Beck*, 349 F. Supp. 2d 975, 978 (M.D.N.C. 2004).

Petitioner also appends to his Petition correspondence sent to him by NCPLS. (Docket Entry 1, Attach 3 at 40, 44, 47, 50-51, 57, 59-62, 64, 66-67, 70-71; Attach. 4 at 27; Attach. 7 at 14-17.) From this, it is evident that NCPLS reviewed Petitioner's case, but ultimately concluded that there were no legal grounds upon which to challenge the

9

convictions. (*Id.*, *see also id.* Attach. 3 at 59-62.) NCPLS attorneys are not required to take every prisoner action brought by inmates and may use their professional judgment when determining whether or not to provide representation in a matter. *Salters v. Butler*, No. 5:06-CT-3073-H, 2006 WL 4691237, * 1 (E.D.N.C. Oct. 19, 2006), *aff'd* 214 F. App'x 267 (4th Cir. Jan. 24, 2007). The fact that NCPLS may have ultimately declined to represent Petitioner does not change the fact that the state has met its obligation to provide inmates adequate access to the courts. *See, e.g., Id.,*; *Hood v. Jackson*, No. 5:10-HC2008-FL, 2010 WL 4974550, at *2 (E.D.N.C. Dec. 1, 2010) (unpublished) (citing cases); *Dockery v. Beck*, No. 1:02CV00070, 2002 WL 32813704, at *2 (M.D.N.C. August 1, 2002) (unpublished).[3]

Nevertheless, this correspondence does warrant some additional discussion. In three letters, NCPLS informed Petitioner that it had calculated June 8, 2012—rather than the January 10, 2012 date calculated by the Court above—as the expiration of one-year deadline by which Petitioner had to file a federal habeas petition. (Docket Entry 1, Attach. 3, at 50, 57, 62, 67.) However, NCPLS's miscalculation of the one-year deadline does not render Petitioner's Petition timely. As an initial matter, courts addressing equitable tolling have found

---

[3] Petitioner asserts that in analyzing his case NCPLS focused on immaterial issues and overlooked meritorious ones. (Docket Entry 1, Attach 4 at 35.) Petitioner essentially contends that he too consequently spent his one-year deadline pursuing fruitless endeavors (such as DNA testing) on the basis of NCPLS's misunderstanding of his case. (*Id.*) The record does not bear Petitioner's interpretation out and, in any event, Petitioner has not satisfied either element (diligence or extraordinary circumstances) that would warrant equitable tolling.

10

that ignorance of the filing deadline is not an extraordinary circumstance.[4] Moreover, courts have been reluctant to consider a mistake of counsel grounds for equitable tolling.[5]

It is equally important to note that even if some period of equitable tolling was proper (for example, from January 10, 2012 until June 8 2012) on the grounds that Petitioner detrimentally relied on the erroneous June 8, 2012 NCPLS deadline, Petitioner would still not be entitled to tolling sufficient to render his Petition timely. This is because Petitioner let the June 8, 2012 date pass and did not file his federal habeas petition until March of 2015, close to three years later. This is despite the fact that NCPLS informed him on or about March 21, 2012 that it would not accept his case, informed him again of the one-year deadline, told him it expired on June 8, 2012, and provided him a post-conviction manual. (Docket Entry 1, Attach. 3 at 59-61; *see also id.* at 50-51.)

Petitioner therefore failed to act diligently even under this purely hypothetical alternative analysis in which he is entitled to some degree of equitable tolling. Additionally, even under this alternative analysis Petitioner did not file his motion for DNA testing or file

---

[4] *See, e.g., United States v. Sosa*, 364 F.3d 507, 512 (4th Cir. 2004); *Jones v. S. Carolina*, No. 4:05-cv-2424-CMC, 2006 WL 1876543, at *3 (D.S.C. June 30, 2006) (citation omitted); *see also Marsh v. Soares*, 223 F.3d 1217, 1220 (10th Cir. 2000) ("[I]gnorance of the law, even for an incarcerated pro se petitioner, generally does not excuse prompt filing.") (citation omitted).

[5] *See, e.g., Rouse*, 339 F.3d at 248 ("[A] mistake by a party's counsel in interpreting a statute of limitations does not present the extraordinary circumstance beyond the party's control where equity should step in to give the party the benefit of his erroneous understanding."); *Beery v. Ault*, 312 F.3d 948, 951 (8th Cir. 2002) ("Ineffective assistance of counsel generally does not warrant equitable tolling."); *Ehrhardt v. Cartledge*, No. 3:08-cv-2266-CMC, 2009 WL 2366095, at *4 (D.S.C. July 30, 2009) (holding that reliance on post conviction appellate counsel's incorrect advice regarding the filing deadline for does not entitle petitioner to equitable tolling); *cf. Goedeke v. McBride*, 437 F. Supp. 2d 590, 597-98 (S.D.W.Va. 2006) (finding statute of limitations equitably tolled when petitioner's counsel consistently represented that he would file a habeas petition and petitioner had no reason to disbelieve his counsel's assurances).

his second MAR until February of 2013 and beyond, well after the expiration of the purported June 8, 2012 deadline. These filing do not revive the filing period. *See Minter*, 230 F.3d at 665.

Third, Petitioner's explanation that his Petition was untimely because he was seeking legal representation from various entities is simply not sufficient grounds for equitable tolling in his case. (Docket Entry 1 at 34-35.) *See Jihad v. Hvass*, 267 F.3d 803, 806 (8th Cir. 2001). Likewise, any alleged delay by the Innocence Commission, or some comparable body, does not warrant tolling for the time it took to review, and decline to address, Petitioner's case. (Docket Entry 1, Attach. 3 at 56, 58, 68.) *See Witherspoon v. White*, No. 1:12-cv-352-RJC, 2013 WL 1798609, at *2 (W.D.N.C. April 29, 2013) (unpublished) (refusing to equitably toll the statute of limitations when the North Carolina Actual Innocence Inquiry Commission allegedly delayed in responding to the petitioner's request for help).

Finally, the Supreme Court recognized in *McQuiggin v. Perkins*, 133 S.Ct. 1924, 1928 (2013), an actual innocence exception to AEDPA's time limitations. To establish actual innocence, "a petitioner must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Schlup v. Delo*, 513 U.S. 298, 327 (1995); *see McQuiggin*, 133 S.Ct. at 1935. "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup*, 513 U.S. at 324. Here, Petitioner asserts that he is innocent and explains that a number of state witnesses perjured themselves on the stand when testifying against him and that the state prosecutors were well aware of this perjury. In support, Petitioner provides trial testimony, newspaper clippings regarding his trial, and

12

Case 1:15-cv-00207-TDS-JLW   Document 12   Filed 12/15/15   Page 12 of 13

evidence of his employment history. (Docket Entry 1, Exs. 5, 7.) This is not new evidence. And, even if it was, it certainly does not meet the high standard of the actual innocence exception to the federal habeas deadline.

### Motion to Appoint Counsel

Petitioner has also filed a motion seeking the appointment of counsel. (Docket Entry 6.) However, the matters cited by Petitioner in his pleadings reflect conditions faced by virtually all prisoner litigants and thus, by definition, do not qualify as circumstances of the sort that warrant appointment of counsel. Nor is it apparent that Petitioner either has a colorable claim or lacks the ability to present any such claim. Petitioner has not demonstrated good cause for the appointment of counsel, nor has he shown that justice requires the appointment of counsel. The request is denied.

### Conclusion

In the end, the Petition was filed out of time and Respondent's Motion to Dismiss should be granted. An evidentiary hearing in this matter is not warranted nor is the appointment of counsel.

**IT IS THERFORE ORDERED** that Petitioner's Motion for the Appointment of Counsel (Docket Entry 6) be **DENIED**.

**IT IS THEREFORE RECOMMENDED** that Respondent's Motion to Dismiss (Docket Entry 8) be **GRANTED**, that the Petition (Docket Entry 1) be **DISMISSED**, and that Judgment be entered dismissing this action.

Joe L. Webster
**United States Magistrate Judge**

December 15, 2015